The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to give their attention for the Court is now sitting. God save the United States and this Honorable Court. Good morning. We're happy to hear. My name is Diana Motz. With me that you can see is one of my colleagues, Judge Harris, and the other one that King is on video, but he can see you and will be an active participant as well. We're happy to hear our unit this morning in number 194786, United States v. Aberant. Mr. Koffmeier, whenever you're ready. I'm sorry if I got you wrong. Thank you, Diana. No, you got it right. May it please the Court. I'm Richard Krauthammer. I hail from Raleigh, North Carolina. I represent the defendant appellant Michael Aberant. This case started back in 2017. Mr. Aberant was charged with being a felon in possession of firearm and ammunition and making a false statement in relation to purchasing firearms and ammunition. He pled guilty to those charges and he was sentenced in October of 2017. His guideline range was 262 to 327 months. He asked the district court for a downward variance. He based his reasoning on his age and his health problems and the fact that he was in state custody and would not receive credit for pretrial confinement on his federal sentence. The district court varied downward, but not as much as he had requested. The district court gave him a 200-month sentence. He appealed and on appeal, this court vacated his sentence and remanded for resentencing and noted that although he received a downward variance, it wasn't as much as he had asked for and the district judge had not placed on the record his reasons for the sentence that he gave. The court cited United States v. Blue in reaching that decision. When the case came back for resentencing in September of 2019, Mr. Aberant again asked for a downward variance. The court again found that the guideline range was 262 to 327 months, but this time instead of granting his request for a below the guideline sentence, the court gave him a guideline sentence of 262 months. The court stated on the record when it did that that it had considered his criminal history, the fact that he was a violent and dangerous person, that he had committed acts of violence in the past, and that it listed the criminal convictions he had received in the past. In announcing his sentence, after announcing his sentence, the prosecutor quickly asked the judge if she had increased his sentence from the first sentencing hearing based on Mr. Aberant's failure to appreciate the wrongfulness of his conduct as evidenced by the allocution he had just given, and the judge said, no, I did it because I carefully reviewed and took into consideration the panel opinion from the Fourth Circuit, instructing me to explain my reasons on the record, which I have. The sentence previously imposed was vacated, and having reviewed the pre-sentence report and reviewed the 3553A factors, I now exercise my sentencing judgment and impose a guideline sentence rather than a downward variance. The judge later issued a statement of reasons and noted that he gave the sentence he gave after reviewing the pre-sentence report and the sentencing factors in 3553A. The court noted the violent nature of the incident offense and the defendant's history of violent prior convictions, finding the defendant to be a dangerous person. The court imposed a low-end guideline range sentence. So Mr. Aberant appealed again, and now the case is back before this court. And on appeal, he has argued that the judge gave him an increased sentence without properly stating on the record the reasons for that increased sentence, and therefore that his sentence must again be vacated and remanded for re-sentencing, and... No, Your Honor. I took over the case on the second appeal. He was representing... You were not involved in either sentencing or the first appeal? That's correct. And in fact, he had two... I think he had two different trial attorneys briefed sentencing hearing. I may be incorrect about that, but I didn't represent him at the trial level. Counsel, I had read your brief as making a vindictive misargument. Right. And so I raised the argument that since the judge didn't properly state on the record his reasons for the increased sentence, that raised a presumption of vindictiveness pursuant to Alabama v. Smith, which cites North Carolina v. Pierce. Well, presumption is an establishment, right? I'm sorry, Your Honor? Presumption of vindictiveness. That doesn't establish vindictiveness, does it? That's correct, Judge. There is a presumption that still has to be established. And then there's case law from the Fourth Circuit that says the defendant must show that there's a reasonable likelihood of actual vindictiveness. Yeah. Counsel, I thought... Maybe I'm confused. I thought that your position was that if the and it's the same judge, then there is a presumption of vindictiveness and it's not established, but it can only be rebutted if the court relied on some new information and that that didn't happen here. I thought that was your argument. Is that not your argument? That is my argument, Your Honor. I'm relying on the North Carolina v. Pierce opinion, which says that there must be events subsequent to the first sentencing hearing. Right. So if all the judge says is, I looked at the same old stuff and this time I'm coming out differently, that is not enough to rebut the presumption, because obviously a judge could always say that and then the presumption would be worthless. That's correct. That's my argument. Okay. And as I read the... Sorry. Go ahead. Go ahead, Judge Motz. No, you go ahead. Well, and as I read the government's brief, they're not actually disputing any of that. They're just saying that's fine. But in this case, the judge actually did rely on new information, not the allocution, not the one they suggested at sentencing, but this time it's the letter from the daughter. That's what he relied on to increase the sentence. So what is your response to that? They say the presumption is rebutted here. I disagree with the government, because the judge was specifically asked, why did you increase the sentence? And he did not say, based on this new information I heard today. He said, no, I'm basing it on... I would say it's because I carefully reviewed and considered the four circuits' opinion, telling me to explain my reasons, which I have. And if you want to say, okay, what were his reasons, go back to what he said initially. This is on page 55 of the joint appendix. He says, in reviewing his criminal history, it appears he's a violent and dangerous person. He committed acts of violence in the past. As his criminal record shows, aggravated battery with a deadly weapon, battery, escape from jail. I think that a guideline sentence is appropriate in this case. And that was it. That's all he gave. He didn't say, I'm basing this on the victim's allocution that I heard for the first time at this hearing or anything like that. Not only that, didn't he actually say... This is like a hypothetical from an exam because he says, that's complete. That's my thought process. Like he actually excludes the possibility that there's something else that he failed to mention. Like this is it. This is the whole universe of things I looked at. Right. On page 56 of the joint appendix, he says, quote, that's complete. That's my thought process. They can examine it, see if it's adequate, see if it's inadequate or give me further instructions. So he's not saying, he's not giving this court any room to interpret on the record that, hey, maybe some of this new information guided his reasoning here. He stated what he stated. Where did the government come up with this idea about the letter from the daughter? I'm sorry, Judge, what's the question? I said, where did the government come up with this idea about a letter from the daughter or the second sentencing? Well, I can't speak for the government, but I presume there's case law that says if there's some sort of objective information in the record indicating what might have guided the judge's increased sentence, that can- Was that letter in the record? Is there a letter in the record that does that? The prosecutor read the letter into the record and that's on joint appendix pages 48 through 50. But even then, I would say if you look at specifically what the victim wrote, she doesn't talk about anything new until the very end. She says, I have been diagnosed with PTSD after this, and I struggle with the basic things in life because of what he did to us. And then she says, we are reminded of what he did every day when seeing the scars on Alex's body, the male victim who was shot by Mr. Aberrant. So that's the only new information that that letter added. But again, the district judge never said, that's what I'm basing my decision on. Well, he said, that's not what I'm basing my decision on. I mean, the government, to its credit, is imploring the district court judge to identify some new evidence that he's relying on. And the district court judge is saying, I will not do that. I'm not doing that. I'm basing it on the old record. And if the fourth circuit doesn't like it, they can tell me that. I agree with that. Could he have based it on the opinion from the fourth circuit? Would that be appropriate? There is case law that says that's appropriate. The government cited it. It is the Williams case, 444 F3rd 250. Basically, it said there's no vindictiveness where the second sentence exceeds the first based solely on Booker having been rendered and the appellate court's mandate. So it is possible to increase a sentence based on an appellate mandate. But I don't read this court's mandate from the first appeal as having directed the judge to enter an increased sentence. You need to state his reasons on the record why he gave the sentence he did. Counsel, I think I maybe have lost something in translation here. I understand that you want us to reverse here. And I thought that the only reason that you offered was vindictiveness by the district court. Do you offer some other reason? No, it's vindictiveness. Vindictiveness against your client, correct? Yes, the presumption of vindictiveness has arisen and it has not been rebutted. That the presumption hasn't even arisen and there would be nothing to rebut, right? Well, that's true. But I believe the presumption has arisen because there's nothing on the record. What gives rise to the presumption on this record? The fact that the judge did not... The new sentence is within the guidelines. Matter of fact, it's the bottom of the guidelines. But he had initially given him a below guideline sentence. Well, he had given him a below guideline sentence, but the sentence where it's appealed here is a guideline sentence and the circumstances here are pretty bad. Well, the case law, Alabama v. Smith, says if there's an increase on resentencing, a presumption of vindictiveness arises if there is not a reason given for the increase or it's not objectively clear from the record why the increase occurred. And North Carolina v. Pierce, which Alabama v. Smith cited... So you want us to send it back basically for the same reason we sent it back the first time? Pretty much, yes. Get it explained again. Right. At least if he's going to... How many times, look at this. You said he talked about him shooting the boyfriend. How many times did he shoot him? A lot. The boyfriend shot seven times. Seven times, okay. I want to get that in here. Okay. But I'm relying on North Carolina v. Pierce, which says the increase must be justified by events that occur subsequent to the first trial or the first sentencing hearing. You help me with that case then. You would agree with me, wouldn't you, that there's no evidence of what we... If this was a movie, there wouldn't be no evidence of what we think of as the motion of vindictiveness against this defendant. I mean, the judge doesn't... He said there's none of that. Right. He never said on the record, I'm giving you an increased sentence because you want on appeal. No, that doesn't exist. No, no, no, no. He doesn't have to say want on appeal. I don't like you. Yeah, or any reason like that. Now, I suppose you could say, okay, well, what if he said... What if he just all of a sudden woke up and said, oh, wait, I didn't realize you're such a bad guy. I didn't realize you're such a violent man. I mean, that might be new, but then he would be... Which he got reversed by the court the first time. Counsel, I don't want to argue your case for you, but several circuits have considered that question. Is it okay if the judge just says the second time, you know what, you won your appeal, but I'm giving you a higher sentence because it just occurred to me how bad you really are. And they all say, no, you can't do that because otherwise the presumption is meaningless because any judge could just say that. If that's enough to defeat the presumption, there's no point in having a presumption. What you need tracking the Supreme Court's case law is something new, either something new happened or something is newly revealed to the judge. Maybe it happened before, but nobody knew about it until then. I mean, I just don't want you giving away your case here. I'm not, Judge. I'm still relying on North Carolina v. Pierce that says you got to hang your hat on something that happened after you sentenced him the first time. And there's nothing in the record here to show that. So that's the basis of my case. Okay. Thank you, Derek. I'm sorry. It's all right. And for relief, just assuming hypothetically, if all of that is right, what is the precise, you want us to send it back and tell the judge what? That he needs to state on the record the reasons for the sentence he's giving Mr. Aberrant, whatever sentence he gives him. But don't, I thought we did about that last time. Right. He stated reasons this time. He just didn't base, he just changed his sentence and didn't base it on anything new. That's the error here. So it looks like I've exceeded my time on my initial argument. Do you want me to keep arguing, Judge Motz? I think it depends. If one of my colleagues has a question, maybe you could. All right. No, we'll hear from you on rebuttal then. Thank you. I'll yield the floor. Thank you. Ms. Brown? Ms. Brown? I live with fear every day that this man will be released one day. Scared to death of what he will do to me and or my family. I've been diagnosed with PTSD after this and struggle with the basic things in life because of what he did. Those are the words of the victim in this case. Can I ask you something, counsel? Did I misunderstand the record? I thought you asked on resentencing for 200 months. Is that not right? It was the government's request on resentencing for the same time. Well, okay, then I don't understand. If you asked for 200 months, if you thought 200 months was sufficient, are you now suggesting that in light of the daughter's testimony, like that was wrong, you should have been asking for 262? What we're suggesting is that in light of the daughter's testimony and the court's explanation, there was not a problem with the court. This was not a vindictive sentence. The court can sentence differently than our request without a presumption and certainly establishment of vindictiveness arising, and that's what we are here on. Well, but Ms. Fritz specifically asked the district court if that was the reason. He said no. What do you think about that? Certainly. She asked the court if the defendant's lack of remorse was the reason, if his allocution- No, would you say that you chose to do that in part because of the defendant's allocution, his continued failure to appreciate the wrongfulness and harm of his actions? Yes, and that's different than the victim's allocution in this case. She asked about the defendant's allocution. But the problem is that the judge didn't just say, no, it wasn't that. He said, here's what it was. These are the things I have taken into account, and he lists some things, and the daughter's letter is not on the list. And then, just so there's no confusion, he says, that is complete, finished. So I don't see, I don't understand how you expect us to read this record to indicate that actually, when he said that's complete, what he meant is that is incomplete. There's one other thing I haven't mentioned yet, and it's the daughter's letter. Certainly. We're not asking you to read complete to mean incomplete. What we're doing is reading the two statements by the court explaining his sentence in conjunction, the finding that this defendant is dangerous and violent with a history of dangerousness and violence, in particular toward loved ones, like the daughter in this case. But citing those two previous specific examples, and the fact that when he said that was complete, he was also relying on the facts of the case and the 3553A factors, which he mentioned specifically, and that it's our position the daughter's testimony certainly speaks to, and speaks to in a way that the first sentencing couldn't accomplish without her explanation of what she's gone through and who this defendant is. That's what this is about, and that's what the daughter provided. All right. I will stop in one minute. I just want to make sure, so as I understand your position, you are not sort of quarreling. You and the defendant basically agree. The sentence went up. That needs to be based on some new information, but that's okay because this one was. This one was based on the daughter's letter. I would quarrel somewhat with the defendant's understanding of new information. I don't think it has to be something that has happened subsequently. I would agree with your honors characterization during the defendant's argument today that it can also be something newly revealed to the court. Right, which would be the daughter's letter. And I think that's the clearest thing, but I also think that the nature of a resentencing remand for explanation builds in that the sentence may be different, that the directive to the court is we need to be sure you considered everything, and the way we do that is by your explanation. So I think it also builds in a fuller picture of the defendant as well. I think here the new information was the daughter, but the nature of a remand for resentencing on explanation builds in, we need to be sure you really considered everything. And so it could be a fuller picture when he's describing the dangerousness and the violence. And here, we think the victim's allocution was the biggest difference, and we think it was in a number of ways. So the cases cited by the defendant were also cited by the government about this don't establish that a sentence can never go up. That's not the case law. There's no rule against a sentence being raised on remand. The issue is if that sentence is the product of actual vindictiveness. And the standard for that is whether those reasons affirmatively appear. So the first question is if this presumption even applies, then if it does apply, whether it can be rebutted with that objective information. And what would the argument be for why it doesn't apply? As I read the Supreme Court cases, they say that if on remand to the same judge after a successful appeal, the sentence goes up, the presumption applies. And as you say, that's not the end of the story. This presumption can be rebutted, but why would the presumption not apply here? If the reasons affirmatively appear on the record, the presumption does not automatically apply. It applies if there are no affirmative reasons appearing in the record. We need to know why the judge did what he did. And if we know, then the presumption does not apply. If we know that it does, yes, Your Honor. And so it's sort of the same thing. Like either if there is some new objective information that explains why this sentence went up, then we're fine. And I'm hesitant to characterize, but yes, I think that's more or less correct. If we know why the judge did what he did, and that's often new information. But I do think in a resentencing context, it doesn't have to be. I think here we had that. But as long as we know what the judge did what he did, if those reasons affirmatively appear, here we did indeed have new information. And so I think we don't necessarily even get to the presumption. If we do, it's a rebuttable presumption. And the way to rebut it is if there is objective information in the record that justifies the sentence. And we certainly think we have that here, even if the court wants to assume that the presumption does apply. In this case, it is, in the government's opinion, largely about the victim allocution on resentencing. And the victim allocution had several impacts. First, it made the facts of the PSR come alive. A lot of the cold facts were contained in the factual record initially, but it read things like this, quoting from the PSR. Aberrant stated, oh yeah, picked up a rifle and fired one round. That was the description before the court of his conflict with his daughter at the first hearing. At the second hearing, when she wrote her letter, that conflict, same event, was described like this by the victim. This was not a gun he had sitting in the house. He woke up the morning after the argument and planned to go purchase a gun and bullets. And less than four hours after the purchase, I was shot at. It adds context. It adds color. And it does add emotion appropriately. Counsel, I hear your argument, but I'm still left with the court saying that didn't make any difference. I think we may be reading it differently, Your Honor. I don't see anywhere the court says that the victim allocution made no difference. I would argue, in fact, his finding about dangerousness and violence was a result of the victim's allocution. Whether it did. And he says no. I read Ms. Fritz said, in light of your decision, would it be fair to say you do that in part because of the defendant's allocution, his continued failure to appreciate the wrongfulness and harm his actions have caused? Her inquiry was about the defendant, his attitude. But the answer is? The answer is that I did it because I carefully reviewed and taken into account and guided by the panel opinion instructing me to explain and that he had reviewed the PSRs, the facts of the case, and the 3553A factors. But I don't think that erases. That's all. It's a thought process. The end. Yes, but I don't think that erases what he had already given as his explanation in that case, which is this defendant's dangerousness and violence. I read those together, certainly, to say that is. But counsel, I mean, presumably the dangerousness and violence were already apparent to him in the first sentencing, right? As Judge King pointed out, he shot at the boyfriend seven times. This can't possibly have been news to the judge. I actually think in some way it is. I understand that perspective, but I think in some ways he was presented as more dangerous and violent upon resentencing because the daughter's testimony, allocution, completely erased, destroyed any notion of self-defense. Now, I know the court found that more likely than not, that this wasn't that the defendant was the initial aggressor, etc. But I think there could still be a lingering question about mitigation based on, well, these two, the son-in-law and the defendant had a fight. Can I tell you my concern? I mean, just going back to the original Supreme Court cases here, right? There's a real concern that when a defendant brings a successful appeal and then goes back to the same judge, that is a circumstance where we have a concern, not to sort of single out any particular judge, but it is a circumstance that gives rise to a concern that that judge may be cranky about having been successfully appealed and may take that out on the defendant. So the Supreme Court establishes what it calls a prophylactic rule. It's going to be overbroad. We understand it will capture some perfectly legitimate sentencing, but we are so concerned that defendants not be penalized and not be deterred from appealing that we are going to require that if a judge wants to increase the sentence under those circumstances, it's going to have to give us something objective and something new. And it's not enough just for a judge to say, well, now I get it better because if that's all the judge, or now it's been brought alive to me, now there's more color and more emotion because if that's all a judge has to do, then defendants can have no assurance when they appeal that they're not going to be punished for it. And I just have a real concern. And I don't think we need more than that to establish a presumption. But in this case, I mean, of course, I agree with you. Judges can sentence for more with a sentence higher than what the government is asking for, but it's pretty unusual. And we consider that when we're considering the substantive unreasonableness of a sentence. And so here you have someone who has successfully appealed, who is back down in front of the same judge that I think is enough and gets a higher sentence, higher than what the government is asking for. And the judge seems to be at pains both to say, I'm not relying on anything new, and I may be a little bit irritated about the Fourth Circuit. I don't want to read too much into what the judge has to say on this, but there's a bit of irritation about the appellate process coming through this transcription aid. And so that's my concern. I'm certainly hesitant to read any tone or implication into a cold record. I don't... Of course, the United States had a representative at the resentencing, right? Yes, Your Honor. We were represented by an assistant U.S. attorney who... Well, she could tell you about three or she could be arguing in front of us. So you can't really say, well, we can't tell anything from the cold record. You had someone there. Certainly, certainly, Your Honor. And I don't mean that in any way. I simply mean there was nothing upon reading that stopped me in my tracks or that made me worried that that's what was happening here. The standard we're looking for... When I was a lawyer, we used to talk to the other lawyers in the case that had handled the case. You don't do that in the United States Attorney's Office? Certainly, Your Honor. We are colleagues. And my understanding is the same as before, that there was nothing in this case of, I don't read nor have I heard of anger or anything to that effect. I think simply the judge was stating how this case got to be before him, the process. He did say that in the first as well. You can appeal this. In the second case, he said, I was given these instructions and that's what I've done. I've considered these things and this is what I've done. This is my complete thought process upon remand. And here's my position. I also think that in this case, there were differences. Most of his purported position has come from you rather than him. I'm sorry, Your Honor? I said most of what you say is his position came from you today rather than from the judge back at the resentencing. I believe what I've said today comes directly from what the judge said about this dangerousness and this violence, reliance on the facts of the case and the 3553A factors, including the defendant's criminal history. I think hearing from the victim also made that come alive in a new way. Something that's stale and printed in a PSR suddenly is received very differently when he's heard from a victim of familial violence by this defendant. And then you look at the... The representative from your office who was there didn't seem to think that that was the natural reaction. I mean, Ms. Fritz says, well, in light of your decision to impose a greater sentence, would it be fair to say that he chose to do that because of defendant's elocution, his continued failure to appreciate the wrongfulness and harm his actions have caused? No, says the district court. I mean, she doesn't... I don't, you know... I... She certainly, she was clarifying if this was a reason that he did what he did, certainly. And she seemed to think that was the reason. I think that was... That may have been, I think, respectfully reading the record, I think he did tell us the reason and it was the dangerousness and the violence and the history of dangerousness and violence. The judge did say that and he said it without any prompting, without any reminder of any directive he'd been given. He said, it appears he's a violent and dangerous person and he committed acts of violence in the past, speaking specifically about past events in his criminal history where he was violent toward family members. Of his criminal history, that is long. The judge singled out two of the three crimes he singled out were these violent acts toward family members, which echoes what you just said. But you can see, counsel, you can see, right, how relying on that, like it does nothing to address the Supreme Court's concerns in these cases because he had all of that in front of him the first time. And the first time he thought 200 months was exactly right. Not more than is necessary, but enough to fully punish that criminal history. Criminal history hasn't changed. And now he's back and the only thing that has changed is that he successfully appealed the first time. And he appealed it on the ground that the district court didn't fully explain my sentence and it comes back and the court's like, you want a full explanation? Fine, 260 months. Like that looks bad. Respectfully, I disagree that the only thing that had changed was the appeal. The other thing that had changed was hearing from the daughter. And it's the government's position that that did three things. First, it made the facts of this case come alive in a new way, in a way that judges are permitted to consider. Second, it did make the criminal history come alive in a different way. It made the criminal history be seen in a different light. This doesn't just say this person was hit with the baseball bat and then stabbed in the back. This doesn't just say this person was pushed to the ground and threatened to have bullets shot into them. It puts a face to those experiences. And also the daughter's allocution settled any issue lingering, mitigating, though it may have been about whether this was at all an act of self-defense. That could have been an open ceremony. So there's this Fifth Circuit case, Resendez-Mendez, where the district court actually says, unlike this district court, the reason my sentence went up is because I'm relying on what the defendant said, his allocution, and I didn't like it. I didn't like his allocution. And the Fifth Circuit says, I'm sorry, you can't do that. That's not objective enough. Under these circumstances, the fact that this has been brought, made alive to you in a new way, that is too subjective. If we allow that to rebut the presumption, then the presumption doesn't do anything because any judge can always say that. So do you want us to, I mean, I assume you think that's wrong and you just want us to disagree with the Fifth Circuit. I certainly don't think you have to agree with the Fifth Circuit. No, we don't. And I know you're well aware of that. I don't think that that's a requirement we would ask this court to put on itself, certainly. But I also think that's where this objective information stopgap, even if the presumption applies, can come into play. Because objective information means if there is information to essentially support that sentence, if it's there to get to that bottom of the guideline sentence, then the Fifth Circuit says it has to be both new and objective. New subjective won't do it and old objective won't do it. And we certainly would not ask that that standard be put in place here in the Fourth Circuit. And we don't think it is. You want us to disagree, OK. I think that is appropriate and I think that would be in line with your existing case law. And I think in this case, the way the presumption works here in the Fourth Circuit is that even if it applies, and we don't think it has to, but even if it does, if there is that objective information justifying this sentence as a stopgap, a backstop, then still the sentence is properly upheld. And here we certainly think there's objective, excuse me, objective information. You talked about the counsel. It really is important for you to stop talking when the judges talk, OK. I know you're new before us, but do you understand that? I think there may have been a technology error. I certainly will stop talking. I think there is, because we don't, your lips don't correspond with your words and haven't the whole time. So what I was going to ask you is you talked about what happened here is more consistent with Fourth Circuit case law on this. So what is your best Fourth Circuit case, the one that most supports what you want us to do here? I think I would cite the ones in our brief. And in fact, perhaps I should have said Supreme Court case law, which certainly applies across the board. But I think our position that we're asking is to follow Alabama v. Smith. And I understand, of course, that's not a Fourth Circuit case, but I meant operative law of the Fourth Circuit. Can I, let me try asking my question this way, because I really do have a genuine concern here. And I don't mean to belabor the point, but under your standard, and I don't want, I really don't want to point fingers at any particular judge. So let's just imagine a hypothetical case. A defendant gets 60, asks for 40 months, gets 60 months, appeals, says the district court didn't consider my arguments. We reverse and send it back. And now the district court sentences him to 100 months, which is still within the guidelines. Sorry, I'm just making this up. And says, and the reason is because there was, the reason is because I've looked back, says what the district court said here. I've looked at your PSR. I've looked at your record. And I now think that is the appropriate sentence. Is there anything in your, in the standard you are suggesting that would protect that defendant? If in fact, the district court was just really mad about the appeal. And that's why he did it. I mean, is there anything in your standard that would stop a district court from doing that? So long as the district court does not say out loud. And the reason is because you appealed. Certainly, if the reasons don't affirmatively appear, or if there's not objective information to support that decision. So in my example, that would be fine. So if the, let's just assume hypothetically that district court is just really, really mad about the appeal. And it's like, I can't believe you appealed my sentence. I gave you a really good sentence. This is bullshit. Now I'm sentencing you to more. But out loud, what I will say is I have looked back at the PSR and I see objective facts that put you at the high end of the guideline range. And that is why I am sentencing you to the high end of the guideline range based on these facts in the PSR. Your standard would give that defendant just nothing. That's the end of the story, right? I think the affirmatively appear and objective information standards may be more difficult without new information. So in that case, that may be, that would be a different question I think than we have. But if there was no new information, then maybe those standards do more work than I think they do in this case. So that may be part of it. I don't understand your answer. You're saying, so you do need new information. Oh, new information, I think is a bit of a misnomer. I think in your newly discovered or newly highlighted, newly emphasized, newly on record, I'm not sure. I think here we don't have to reach that. And I'm not sure based on the case law, how your question would come out. It may be an issue of first impression. I certainly think it's harder if there is nothing new in the record. So your argument really does depend on this was about the daughter, the daughter's letter. That's how I read your brief. I thought that was the argument in your brief. Yes, that this is all about the, OK. Thank you. Counselor, you have any rebuttal? Briefly, Your Honor, I would simply say that I agree with the government that an increased sentence can be based on a new reveal of old information. And perhaps there is, there was a new reveal of old information on this record. But the district judge never linked up his reasoning to that new reveal of the old information. He never said, oh yeah, that's why I'm giving you 60 extra months. It's because victim Chickalisi came in and told me her story today. And so I'm relying not only on Alabama v. Smith and North Carolina v. Pierce and their progeny, but also this court's opinion in the United States v. Blue, which says we're not gonna fashion reasoning for a judge who hasn't explicitly and affirmatively stated his reasons on the record. We're gonna kick it back and make him say why he gave the sentence he gave. So that's what this case boils down to. I'm asking the court to rule in my client's favor, vacate his sentence, and once again, remand the case back to the district judge for resentencing. Thank you. Thank you very much. I understand that you're court appointed. Is that correct? Yes, ma'am. Well, we very much appreciate your efforts on behalf of your client. Unless one of my colleagues has an additional question. Judge King, I can't see you. Judge Harris doesn't look like she would know. All right. Thank you very much. Thank you.
judges: Diana Gribbon Motz, Robert B. King, Pamela A. Harris